Hon. Richard Ravitch Chairman Metropolitan Transportation Authority
This is in response to your inquiry whether the directors of the New York Convention Center Development Corporation (Development Corporation) are subject to the provisions of sections 73 and 74 of the Public Officers Law. I note that you have indicated that the directors of the Development Corporation serve part-time and receive no remuneration for their work.
The Development Corporation was created by section 5, chapter 35 of the Laws of 1979, which added a new section 6262 to the Unconsolidated Laws. The Development Corporation was created as a subsidiary of the New York State Urban Development Corporation (Uncons. Laws, § 6254) and is organized pursuant to the Business Corporation Law (L 1979, ch 35, § 5, subpar (1)). Its sole stockholders are the New York State Urban Development Corporation (UDC) and the Triborough Bridge and Tunnel Authority (Triborough) (L 1979, ch 35, § 5, subpar (2)). Each of the stockholders is entitled to elect one-half of the members of the board of directors of the Development Corporation (ibid.).
The duties of the Development Corporation are to acquire real or personal property and to plan, design, construct and develop the Convention Center (L 1979, ch 35, § 5, subpars (3) (a), (b) and (c)).
Pursuant to section 73 of the Public Officers Law, "officers or employees of a state agency, members of the legislature or legislative employees" are regulated as to certain private business or professional activities which may tend to interfere with their professional responsibilities. Section 74 of the Public Officers Law provides for a code of ethics which sets the general standard of conduct to be reasonably expected from "officers or employees of a state agency, members of the legislature or legislative employees".
Sections 73 and 74 of the Public Officers Law define "state agency" as "any state department or division, board, commission, or bureau of any state department".
Obviously, since neither UDC nor its subsidiary, the Development Corporation, is a "state department or division, board, commission or bureau of any state department", neither falls within the definition of a "state agency" as defined under these provisions of the Public Officers Law. It thus becomes necessary to examine the statutes under which the respective corporations were created.
We find that by statute, directors, officers and employees of the UDC are expressly subject to the provisions of sections 73 and74 of the Public Officers Law (Uncons. Laws, § 6254, subd (3)).
The legislative intent in subjecting the directors of the UDC to Public Officers Law, §§ 73 and 74, was clearly to safeguard "the public trust which * * * is an essential part of the obligation of public service. * * * The people are entitled to know that no * * * selfish motive is permissible which interferes with the highminded and honorable conduct of public affairs" (Governor Thomas E. Dewey's Annual Message to the Legislature on the enactment of Public Officers Law, §§ 73 and 74, Jan. 6, 1954, reported in N Y Legis Ann, 1954, p 313).
As the Court of Appeals has stated in Rapp v Carey, 44 N.Y.2d 157,163-164 (1978), regarding Public Officers Law, §§ 73 and 74:
 "That statute [Public Officers Law, § 74], called a code of ethics for State officers and employees, provides guidelines designed to eliminate substantial conflicts of interest between State duties and private interests. Together with section 73 of the Public Officers Law, which, as opposed to guidelines, contains absolute rules and proscriptions, section 74 constitutes the legislative policy of the State in the conflict of interest area."
Clearly the foregoing considerations apply to the Development Corporation. The legislative findings and declarations to the New York Convention Center Development Corporation Act state in pertinent part:
 "It is * * * found and declared that the convention and exhibition center will provide significant economic and social benefits to the city, state and region, and that, consistent with social, economic, environmental and other essential considerations of state policy, locating the convention and exhibition center in the area generally bounded by thirty-ninth street on the north, thirtieth street on the south, eleventh avenue on the east and twelfth avenue on the west is in the public interest, considering the convenience and accessibility of location, the elimination of unsanitary and substandard conditions, the nature and economic characteristics of various other sites considered and the immediacy of the needs of the people of the city, state and region for the realization of the significant economic and social benefits to be derived from the convention and exhibition center.
 "It is further found and declared that the successful operation and maintenance of the convention and exhibition center demands skillful management and the continuing support of the state.
 "Therefore, it is hereby found and declared that it is in the public interest that a subsidiary of New York state urban development corporation, assisted by the state of New York, plan, design, construct and otherwise develop a convention and exhibition center,
and that there be created a public benefit corporation for the purposes of operating and maintaining such convention and exhibition center and to vest such powers in such corporation as are necessary or convenient to effectuate those functions, and that the exercise of the rights and powers herein authorized shall serve a public purpose." (Emphasis supplied.) (L 1979, ch 35, § 1)
It is clear from the above findings that the directors of the Development Corporation were meant to function in the public trust.
Significantly, the sole owners of the Development Corporation, the UDC (Uncons. Laws, § 6254 (3)) and the Triborough* are both expressly subject to Public Officers Law, §§ 73 and 74. Yet, an examination of twenty public authorities created in the last decade reveals that only eight of the twenty were expressly made subject to Public Officers Law, §§ 73 and 74 by the Legislature (Public Authorities Law, Not Subject: Title I-a, Title 2-a, Title 3, Title 4-a, Title 9-a, Title 14, Title 18, Title 18-a, Title 5, Title 13-a (but cf. § 2040-p), Title 14-a, Title 27; Subject: §§ 1840-b (4), 1852 (5), 2403 (3), 2433 (4), 2463 (4), 2503 (4), 2534 (3), 3011 (3)). This pattern suggests that in expressly subjecting the UDC and Triborough to Public Officers Law, §§ 73 and74, the Legislature evidenced a deliberate, conscious policy of safeguarding the specific public trust committed to these particular public entities by law.
Additionally, the fact that $45,000,000 of public funds have been appropriated to UDC for the stated purpose of being transferred to its subsidiary, the Development Corporation, for the Convention Center (L 1979, ch 35, § 3 (1)), indicates the close association between these two corporations perceived by the Legislature.
Further support for the position here taken may be found in section 6262 of the Unconsolidated Laws (Urban Development Corporation Act), entitled "Subsidiaries: how created", which authorizes the UDC to create subsidiaries and sets out the bounds within which such subsidiaries and their directors must operate. Subdivision 1 of section 6262 of the Unconsolidated Laws provides that:
 "The corporation shall have the right to exercise and perform its powers and functions through one or more subsidiary corporations." (Emphasis supplied.)
Thus, although in one sense the Convention Center Development Corporation may be deemed to be a separate entity, in another, and very real sense, it must be viewed as being one with its parent, and must, in consequence, be held subject to the same restrictions and limitations as are that parent (cf. Matter of Iroquois Gas Corp. v Maltbe,251 App. Div. 528 [3d Dept, 1937], affd 279 N.Y. 575 [1938]; Arr-EmPlastering Corp. v 515 East 85th Street Corp., 21 A.D.2d 415 [1st Dept, 1964]; City of New York v LIRR, 44 N.Y.2d 827 [1978]). In Matter ofIroquois Gas Corp. v Maltbe, supra, the Appellate Division, Third Judicial Department stated (251 App. Div., at p 529):
 "Separate corporations, with common stock ownership, should not be treated as individual entities if thereby reasonable regulation is hampered."
So, too, here. Since UDC and Triborough are subject to the requirements of the Public Officers Law, the Convention Center Development Corporation should likewise be subject to such reasonable regulation.
Section 6262 states that the powers and limitations of the subsidiary are not to be construed as "inconsistent" with the terms of the statute by which the parent corporation created the subsidiary. Here, the Legislature has expressly decreed, in the same statute that authorizes the parent UDC to create subsidiaries, that UDC's directors, officers and employees are subject to the Public Officers Law, §§ 73 and 74
(Uncons. Laws, § 6254 (3)). It would be "inconsistent with the statute * * * pursuant to which [the UDC] subsidiary was incorporated" not to subject it to the same restrictions as the parent corporation.
Furthermore, since the officers of UDC and of Triborough are themselves subject to the State Code of Ethics, Public Officers Law, § 74, which provides in relevant part (subd 3h):
 "* * * should endeavor to pursue a course of conduct which will not raise suspicion among the public that he is likely to be engaged in acts that are in violation of his trust."
it might well be considered an impropriety for them knowingly to appoint to the board of the Convention Center Development Corporation an individual having a conflict of interest, even were the Convention Center Development Corporation not an agency directly subject to the strictures of Public Officers Law, §§ 73, 74.
It is reasonable to assume from the relationship and transactions described above that the Legislature intended to subject the directors of the Development Corporation to Public Officers Law, §§ 73 and 74, and I so conclude.
* The members of the Triborough Bridge and Tunnel Authority are the ex-officio members of the Metropolitan Transportation Authority (Public Authorities Law, § 552 (1)). The members of the Metropolitan Transportation Authority are expressly subject to Public Officers Law, §§ 73 and 74 (Public Authorities Law, § 1263 (5)).